UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-209-KSF

KYCOGA COMPANY, LLC                                                                  PLAINTIFF

v.                              **OPINION & ORDER**

SAPPHIRE COAL COMPANY                                                               DEFENDANT

\* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of the defendant, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted [DE #6]. This matter is fully briefed and is ripe for review. For the reasons set for below, the defendant's motion to dismiss will be granted.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The facts, as alleged by the plaintiff, Kycoga Company, LLC ("Kycoga"), are as follows. Kycoga owns both the surface and mineral rights on certain real property located in Perry County, Kentucky. On April 9, 2007 Kycoga and the defendant, Sapphire Coal Company ("Sapphire"), entered into a Lease Agreement whereby Kycoga leased its coal reserves to Sapphire and granted Sapphire the incidental rights to the surface as were necessary to the efficient removal of the leased coal. Because the Lease Agreement permits various forms of mining, including surface mining, contour mining, and finger ridge removal, which necessarily contemplate demolition of the surface, Kycoga contends that the Lease Agreement precludes Sapphire from assigning or otherwise transferring its rights and obligations under the Lease Agreement in any way without prior written

1

consent. Specifically, Section 9.1 of the Lease Agreement provides in pertinent part:

> [Sapphire] shall not mortgage, encumber, assign, convey, lease, underlet, sublease, license, subcontract, transfer, or set over by any agreement or contract whatever, any of its estate, interests, or mining rights hereunder, or any part thereof, or the improvements made or placed upon the Leased Premises, or any part of said improvements to any person or persons whomsoever, or any corporation or other entity whatsoever, without the written consent of [Kycoga]. This Section shall not be construed to prohibit such transactions with wholly owned subsidiary or affiliated companies of [Sapphire], provided [Sapphire] promptly notifies [Kycoga] prior to the transaction. None of the rights or privileges granted under this Agreement may be encumbered or dedicated in any manner by [Sapphire]. . . .

[DE #1-2].

On or about April 30, 2009, shortly after the Lease Agreement was executed, Metinvest, U.S., Inc. ("Metinvest"), a Ukranian company, purchased United Coal Company ("United"), the parent company of Sapphire, thereby also acquiring Sapphire. According to Kycoga, this change in ownership and control of Sapphire constituted a transfer precluded by Section 9.1 of the Lease Agreement. Kycoga contends it had no notice of this transfer and did not consent to the transfer. According to Kycoga, this transfer results in Sapphire's default under the Lease Agreement.

On May 27, 2009, Kycoga sent a letter to Sapphire, giving notice of its default [DE #1-3]. As a result, Kycoga declared Saphhire in default and filed this lawsuit on June 11, 2009 [DE #1]. Under the Lease Agreement, default carries with it certain consequences for Sapphire, including, without limitation, the following:

(a) Section 11.3(a) provides, in relevant part:

> [Sapphire] shall cure any default . . . contest the notice, or diligently begin to prosecute the work of curing the default within twenty (20) days of notice thereof, and failing to do so, [Kycoga] may by notice terminate this Agreement effective at the end of such twenty (20) day period whereupon [Sapphire] shall quit such operations on the Leased Premises and all property of [Sapphire] thereon shall remain thereon as security for any damages due for such default until [Kycoga] has

been paid any monetary amounts to which they it may be entitled for such default. [Kycoga] shall have the right, after such twenty (20) day period, and after notice of termination, forfeiture or cancellation, to re-enter the Premises and to exclude [Sapphire] therefrom and to hold and possess the Leased Premises as of its former estate therein. . . .

(b)     As security in case of any default on the part of Sapphire, Section 11.2 grants Kycoga a lien on all of Sapphire's property, and provides, in relevant part:

[Sapphire] agrees that [Kycoga] shall, and does hereby have, as additional security for the performance of all of the terms of this Agreement, a lien upon all Coal mined from the Leased Premises or placed in mine site stockpiles used in connection therewith, and upon all improvements and personal property made or placed by [Sapphire] on said Leased Premises, and upon all [Sapphire's] property and equipment used in the mining, transporting, cleaning and shipping of the Coal mined hereunder located on the Leased Premises, and in the event of default, a lien on accounts receivable from the sale of Coal mined from the Leased Premises. Said lien is in addition to all other statutory liens and is given as further security for the payment of the royalties, rentals, and other payments herein provided, and for the performance of each and all of the covenants of this Agreement contained, upon the part of [Sapphire] to be observed, kept, and performed. . . .

(c)     With regard to Kycoga's remedies under the Agreement, Section 11.4 provides:

The remedies provided for herein are in addition to all other rights and remedies otherwise provided for herein or at law. All the provisions contained herein for the collection of royalty, rentals, or other payments or for the enforcement or protection of the rights of [Kycoga] shall be deemed cumulative and not exclusive, and shall not deprive [Kycoga] of the benefit of any other legal, statutory, or equitable remedies, or other remedies in this Agreement provided.

(d)     Section 11.1 entitled Kycoga to recoup any and all attorney's fees incurred in connection with enforcing its rights under the Lease Agreement.

Based on Sapphire's alleged default under the Lease Agreement, Kycoga has filed this civil action, based on diversity of citizenship for declaratory judgment and damages [DE #1]. In Count 1, Kycoga seeks a declaratory judgment that Sapphire is in default under the Lease Agreement because of its breach of Section 9.1and that Kycoga has the right to terminate those lease rights

3

under Section 11.3(a). In Count 2, Kycoga alleges breach of contract, and in Count III, Kycoga alleges breach of the implied covenant of good faith and fair dealing. Kycoga seeks a declaratory judgment, damages, interest, and attorney's fees and costs.

In response, Sapphire filed the motion to dismiss currently before the Court [DE #6]. Sapphire contends that the Lease Agreement does not preclude a transfer of the membership interests in the limited liability company which owns the Sapphire, the corporate lessee.

## II.   MOTION TO DISMISS STANDARD

Sapphire contends that Kycoga's claims against it must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005)). When evaluating a motion to dismiss for failure to state a claim, the Court accepts as true the plaintiff's factual allegations and construes them in the plaintiff's favor. *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007); *see Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007). Dismissal for failure to state a claim is warranted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Fieger v. U.S. Atty. Gen.*, 542 F.3d 1111, 1116 (6th Cir. 2008); *see Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003). "The factual allegations in a complaint need not be detailed: they 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Nader*, 545 F.3d at 470 (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)).

At issue in this case is whether Sapphire has violated the terms of the Lease Agreement. Kycoga has attached the Lease Agreement and Notice of Default Letter as exhibits to its Complaint. Inasmuch as these documents are attached to Kycoga's Complaint and are central to its claim against Sapphire, the Court may consider the exhibits without converting the motion to dismiss into a motion for summary judgment. While Kycoga's Complaint refers to the purchase of United Coal by Metinvest, Kycoga does not attach the purchase documents as an exhibit to its Complaint. However, because Sapphire has attached the Membership Interest Purchase Agreement as an exhibit to its motion to dismiss, the Court may also consider this exhibit in the context of a motion to dismiss because the sale is referenced in the Complaint and is central to Kycoga's claim. *Greenberg v. Life Ins. Co.*, 177 F.3d 507 (6th Cir. 1999); *Weiner v. Klais and Co.*, 108 F.3d 86 (6th Cir. 1997).

### III.   ANALYSIS

The issue for the Court is whether the sale of the membership interests of United Coal to Metinvest constitutes a prohibited transfer of Sapphire's interest in the Lease Agreement to another entity. When interpreting contracts in a diversity action, federal courts generally enforce the parties' contractual choice of governing law. In this case, the Lease Agreement provides that it "shall be interpreted and construed in accordance with the laws of the Commonwealth of Kentucky" [DE #1-2, § 13.8]. In Kentucky, the construction and legal effect of contracts is a matter of law for the Court. *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007).

Sapphire argues that the sale of the membership interests in United Coal to Metinvest did not result in a transfer or assignment of Sapphire's interests under the Lease Agreement. Sapphire cites various state and federal cases from other states and districts which hold that the transfer of ownership interests in a company does not violate a lease clause prohibiting transfer by assignment.

Sapphire further argues that based on the fundamental principal that corporate contracts are held by the corporation, not the corporation's shareholders, a stock sale does not violate a contractual provision prohibiting transfers or assignments. Sapphire notes that under Kentucky law, restrictive covenants in lease agreements are to be strictly construed, and the Lease Agreement contains no language regarding a transfer of equity interests in either Sapphire or its parent, United Coal. Finally, Sapphire argues that Kycoga could have included language in the Lease Agreement prohibiting a change or control of ownership of Sapphire, yet failed to do so. Accordingly, Sapphire argues that it did not violate terms of the Lease Agreement.

On the other hand, Kycoga asserts the following arguments as grounds to deny Sapphire's motion to dismiss. First, Kycoga argues that based upon the broad language in Section 9.1 of the Lease Agreement, the burden was on Sapphire to include language in the Lease Agreement permitting such a transfer. Second, Kycoga relies on *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090 (6th Cir. 1979), for the proposition that a change in ownership does constitute a prohibited transfer. Third, Kycoga argues that equity favors the enforcement of the anti-transfer provision in Section 9.1 due to the fact that the strip/surface mining and mountaintop removal operations permitted under the Lease Agreement are "personal" in nature and "deserving of protection from transfer to foreign hands."

Under Kentucky law, the terms of a contract, if clear and unambiguous, must be given their plain and ordinary meaning. *Nationwide Mutual Insurance Company v. Nolan*, 10 S.W.3d 129, 131-32 (Ky. 1999). In this case, the language of Section 9.1 of the Lease Agreement is clear and unambiguous. Specifically, this section, entitled "Assignment, Subletting or Mortgaging Premises Prohibited," restricts Sapphire from encumbering or transferring its "estate, interests, or mining

rights hereunder" or "the improvements made upon the Leased Premises." Nowhere in this section, or any other section, does the Lease Agreement prohibit a change in control of either Sapphire or its parent corporation, United Coal. While the owners of United Coal did "transfer" their membership interests to Metinvest, Sapphire has transferred nothing. There is simply no authority under Kentucky law for the proposition that in the context of a lease, the purchase of shares in the corporate lessee or its parent effects a transfer or assignment of the lease to the purchaser. Moreover, Kentucky law has a long history of disfavoring forfeiture of coal leases. *Hogg v. Forsythe*, 248 S.W. 1008, 1011 (Ky. 1923).

Additionally, to the extent that Kycoga relies the Sixth Circuit's decision in *PPG Indus. Inc.*, that case is not relevant or controlling to the issue before this Court. In *PPG Indus. Inc.*, the Sixth Circuit held that a surviving corporation in a statutory merger did not acquire the patent license rights of the constituent corporations where provisions in the patent license agreement against assignment and transfer did not contain an exception for merger. The appellate court explicitly differentiated patent cases from real estate cases, noting that as an interest in real property, a lease "is subject to the deep-rooted policy against restraints on alienation. Applying this policy, courts have construed provisions against assignability in leases strictly and have concluded they do not prevent the passage of interests by operation of law." *PPG Indus., Inc.*, 597 S.W. at 1095. On the other hand, "[t]here is no similar policy which is offended by the decision of a patent owner to make a license under his patent personal to the licensee, and non-assignable and non-transferable. In fact, the law treats a license as if it contained these restrictions in the absence of express provisions to the contrary." *Id*.

*PPG Indus. Inc.* is also distinguishable in that it involved a merger of two companies in which one did not survive, as opposed to a stock transfer in a parent corporation. The appellate court

noted that after the merger, the holder of the patent license was no longer the same entity with whom the licensor had contracted. In the present case, however, Sapphire is the same entity with which Kycoga contracted. It still exists as before and continues to operate the lease.

Accordingly, under the plain and unambiguous terms of Section 9.1 of the Lease Agreement, United Coal's sale of its membership interests to Metinvest does not constitute a prohibited transfer under Section 9.1 of the Lease Agreement.. The Court will thus grant Sapphire's motion to dismiss for failure to state a claim upon which relief can be granted.

### IV. CONCLUSION

For the reasons set forth below, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Sapphire's motion to seal [DE #7] is **GRANTED**, and the Clerk is directed to **FILE** Exhibit 2 to the Sapphire's motion to dismiss **UNDER SEAL**; and

(2) Sapphire's motion to dismiss [DE #6] is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket.

This September 21, 2009.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**